# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUSENI KAMARA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 13-6728 |
| | : | |
| HORIZON HOUSE, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

**Jones, J.**                                                                 **December 18, 2015**

Now pending before the Court is Defendant's Motion for Summary Judgment (D.'s Mot. for Summ. J.) (Dkt No. 15), including Defendant's Statement of Undisputed Material Facts (D.'s SUMF), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J.) (Dkt No. 16), including Plaintiff's Response to Defendant's Statement of Facts (Pl.'s Resp. to SOF) and Plaintiff's Counter-Statement of Facts (Pl.'s SOF), Defendant's Reply in Support of Motion for Summary Judgment (D.'s Reply in Supp. of Mot. for Summ. J.) (Dkt No. 19), including Defendant's Response to Plaintiff's Counter-Statement of Facts (D.'s Resp. to Pl.'s SOF), and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment Surreply (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. Surreply ) (Dkt No. 23).  As a preliminary matter, the court perceives that only the following claims remain pending: (1) violations of Title VII on the bases of (a) national origin discrimination, (b) hostile work environment, (c) retaliation; (2) violations of 42 U.S.C. § 1981 on the bases of (a) hostile work environment, (b) retaliation; and (3) violations of the Pennsylvania Human Relations Act on the bases of (a) national origin discrimination, (b) hostile work environment, and (c) retaliation.[1]

---

[1] In Plaintiff's original complaint, he also alleged racial discrimination. (Pl.'s Compl. ¶ 22, 27, 29.) Defendant has moved for summary judgment as to these claims. (D.'s Mot. for Summ. J. 3, 6-7.) In response, Plaintiff has withdrawn his race discrimination claims and therefore does not oppose Defendant's motion on those grounds. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 1 n.1.) Thus, insofar as those claims do remain pending, those claims are dismissed.

## I.    Facts

The Court recites the undisputed facts as viewed in the light most favorable to Plaintiff.

Plaintiff, Mr. Luseni Kamara, is a black male of Liberian origin. (D.'s SUMF ¶ 3-4; Pl.'s Resp. to SOF ¶ 3-4; Pl. Dep. 190:15-16; Pl. Dep. 199:7-9). Plaintiff began his employment with Horizon House, a non-profit organization which, in part, provides housing and therapy services to traumatized and mentally ill young adults, on or about December 27, 2007 as a full-time Rehabilitation Counselor. (D.'s SUMF ¶ 1-2; Pl.'s Resp. to SOF ¶ 1-2; Sweeney Dep. 9:7-10:6; Pl. Dep. 27:24-25, 29:15-18, 46:13-19, 142:19-25.) Plaintiff held this position until his termination on June 25, 2012. (D.'s SUMF ¶ 2; Pl.'s Resp. to SOF ¶ 2; Pl. Dep. 27:24-25, 29:15-18, 46:13-19, 142:19-25.) Prior to his suspension and termination, Plaintiff was never disciplined during his four years of employment. (Pl.'s SOF ¶ 75; Exhibit J at p. 24-25, No. 61, 62; Martin Dep. 20:11-20, 21:1-3, 20-24, 22:1-3, 12-22; Sweeney Dep. 39:3-5.) Initially, Plaintiff was scheduled to work the 3:00 pm to 11:00 pm shift. (Pl.'s SOF ¶ 30; Pl. Dep. 57:13-20.) At the time of his termination, Plaintiff worked the overnight shift, which started at 11:00 pm and ended at 7:00 am. (D.'s SUMF ¶ 20; Pl.'s Resp. to SOF ¶ 20; Pl. Dep. 49:23-50:11, 50:17-23.) Plaintiff was required to remain awake and alert throughout this shift. (D.'s SUMF ¶ 20; Pl.'s Resp. to SOF ¶ 20; Pl. Dep. 49:23-50:11, 50:17-23.)

### 1.    Ongoing Treatment under Mr. Ahmal Martin

Beginning in February of 2012, Plaintiff was supervised by Ahmal Martin and assigned to work at the Rector Street single family house where two disabled young adults resided. (Pl.'s SOF ¶ 11, 25; D.'s Resp. to Pl.'s SOF ¶ 25; Pl. Dep. 53:4-21; Martin Dep. 7:22-23, 11:2-7.) Mr. Martin is an African-American male with authority to hire and discipline employees. (Pl.'s SOF ¶ 13-14; D.'s Resp. to Pl.'s SOF ¶ 14; Martin Dep. 29:4-7, 12:23-24, 13:1-11; Sweeney Dep. 19:18-24; Lyde Dep. 16:14-18.) Mr. Martin is supervised by Ms. Stacey Sweeney who is an American with the authority to discipline and terminate employees. (Pl.'s SOF ¶ 16-18; D.'s Resp. to Pl.'s SOF ¶ 16-18; Sweeney Dep. 10:7-10, 23-24, 15:14-16, 16:7-13, 18:8-10.) Both supervisors indicated to Plaintiff on multiple occasions that staff should not work alone at the Rector Street house because it was "not safe." (Pl.'s SOF ¶ 26-27; Pl. Dep. 73:17-25, 74:12-14, 23-25; Sweeney Dep. 40:2-10.) Mr. Martin initially scheduled Plaintiff to work the 3:00 pm to 11:00 pm shift but then later changed it to the 11:00 pm to 7:00 am shift. (Pl.'s SOF ¶ 28-30; Pl.

Dep. 57:13-20; Martin Dep. 28:16-18; 29:1-3.) Plaintiff rarely had a co-worker assigned to work with him on that shift or, at the least, rarely had the assigned co-worker show up. (Pl.'s SOF ¶ 31; Pl. Dep. 71:14-25.)

Plaintiff indicated to Mr. Martin that he did not like to work alone because it posed a risk to the clients. (Pl.'s SOF ¶ 33; Pl. Dep. 77:19-25, 78:1-17.) Mr. Martin responded by saying that "Africans are lazy; all you Africans do is complain; Africans, they don't like to do any work." (Pl.'s SOF ¶ 34; Pl. Dep. 77:6-12; 78:20-23.) Plaintiff expressed concern about such comments, but Mr. Martin simply walked away. (Pl.'s SOF ¶ 35; Pl. Dep. 77:7-18, 79:3-4, 10-14, 81:11-17.) Plaintiff repeatedly complained about the schedule from February until May 2012 and Mr. Martin repeatedly made hurtful and offensive comments about Africans in return. (Pl.'s SOF ¶ 37-38; Pl. Dep. 77:6-12, 96:2-11, 101:13-24, 102:2-9, 15-24, 269:3-25.)

In April of 2012, Plaintiff complained to Ms. Sweeney about the negative comments Mr. Martin had made about Africans. (Pl.'s SOF ¶ 42; Pl. Dep. 81:18-25, 82:1-25, 84:6-9.) Ms. Sweeney told Plaintiff that Africans have heavy accents and that her staff has trouble understanding them, but she would speak to Mr. Martin. (Pl.'s SOF ¶ 43; Pl. Dep. 82:25, 83:1-6, 84:15-23, 192:18-24, 271:2-8.) Later in April, when Ms. Sweeney still had not followed up with Plaintiff, Plaintiff then made another complaint and expressed how hurt he had been from the comments and therefore wanted to sit down and talk about what was happening. (Pl.'s SOF ¶ 45; P. Dep. 85:6-7, 86:5-6, 11-19, 87:5-13, 88:8-11.). Again, Ms. Sweeney failed to respond. (Pl.'s SOF ¶ 46; Pl. Dep. 88:24-25, 89:1-3.)

In or around May of 2012, Plaintiff drove to the human resources office to speak with a human resources manager at Defendant's 30th Street location. (Pl.'s SOF ¶ 46-47; Pl. Dep. 89:8-23, 90:6-13, 91:3-4, 91:5-12.) Plaintiff recounted the negative comments about Africans made by Mr. Martin and detailed Ms. Sweeney's failure to address the issue. (Pl.'s SOF ¶ 47-49; Pl. Dep. 91:5-17.) The human resources manager told Plaintiff she would schedule a meeting to discuss the issue, however she never scheduled a meeting and never reached out to Mr. Martin or Ms. Sweeney. (Pl.'s SOF ¶ 49-50; Pl. Dep. 92:5-6, 18-21, 93:2-13, 94:3-5; Sweeney Dep. 41:19-24, 42:1-8).

Mr. Martin and Ms. Sweeney never reported any of Plaintiff's complaints to human resources despite policies requiring them to do so. (Pl.'s SOF ¶ 39-40, 51; Lyde Dep. 23:9-23, 59:5-24.) Neither Mr. Martin nor Ms. Sweeney were ever addressed, disciplined or terminated

for making discriminatory comments. (Pl.'s SOF ¶ 54-55; Sweeney Dep. 29:8-11; 43:8-23; Martin Dep. 56:8-16.) Mr. Martin never ceased making discriminatory comments. (Pl.'s SOF ¶ 56; Pl. Dep. 272:3-9).

   2. *Overnight Shift from Tuesday May 1, 2012 through Wednesday, May 2, 2012.*

Plaintiff was working the overnight shift from the evening of May 1, 2012 through the morning of May 2, 2012. (D.'s SUMF ¶ 25; Pl.'s Resp. to SOF ¶ 25.) Plaintiff removed his shoes, relaxed, and closed his eyes for five to ten minutes, but denies that he was asleep. (D.'s SUMF ¶ 25; Pl.'s Resp. to SOF ¶ 25; Pl. Dep. 120:14-18, 120:22-121:14, 121:24-122:8,165:10-15.) A photograph was taken by one of the disabled participants ("Participant") who lived in the house showing Plaintiff in this position. (D.'s SUMF ¶ 26; Pl.'s Resp. to SOF ¶ 26; Sweeney Dep. 48:1-3; Investigative Report of Joanna Hines.) Participant then called the supervisor on call, Ms. Sweeney, and reported that Plaintiff was asleep and would not stir to her making noises. (D.'s SUMF ¶ 27-28; Pl.'s Resp. to SOF ¶ 27-28; Sweeney Dep. 46:4-22.) Ms. Sweeney instructed Participant to leave the house phone near Plaintiff so that Ms. Sweeney could call the phone in an attempt to awaken Plaintiff, but Plaintiff did not answer either of the two times Ms. Sweeney called. (D.'s SUMF ¶ 29-31; Pl.'s Resp. to SOF ¶ 29-31; Sweeney Dep. 48:7-49:24.) Ms. Sweeney then called Plaintiff's cell phone, but Plaintiff did not answer as his phone was in his car. (D.'s SUMF ¶ 33; Pl.'s Resp. to SOF ¶ 33; Sweeney Dep. 53:22-54:11.)

   3. *May 2, 2012 - Administrative Leave*

Ms. Sweeney contacted Jerry Skillings, Senior Vice President, and Yusef Joyner, Vice President of Human Resources, regarding the incident that occurred on the overnight shift and placing Plaintiff on administrative leave. (D.'s SUMF ¶ 35; Pl.'s Resp. to SOF ¶ 35; Sweeney Dep. 57:19-59:7; Skillings Dep. 7:10-12; Joyner Dep. 7:6-8, 21:7-8.) Plaintiff was placed on administrative leave pending an investigation. (D.'s SUMF ¶ 36; Pl.'s Resp. to SOF ¶ 36; Administrative Leave Letter; Pl. Dep. 128:23-129:24.) Ms. Sweeney also submitted an incident report to the Quality Improvement Department and reported it to the investigation hotline. (D.'s SUMF ¶ 37; Pl.'s Resp. to SOF ¶ 37; Sweeney Dep. 65:7-9, 66:6-17, 69:18-29-70:16; Sweeney Incident Report.) As a result, an independent investigator, Joanna Hines, was assigned to investigate the incident. (D.'s SUMF ¶ 38; Pl.'s Resp. to SOF ¶ 38; Hines Dep. 41:25-42:15.)

### 4.  The Investigation

Ms. Hines interviewed and obtained witness statements from Plaintiff, Ms. Sweeney, Mr. Martin (Plaintiff's Direct Supervisor), and the Participants who lived in the house. (D.'s SUMF ¶ 39; Pl.'s Resp. to SOF ¶ 39; Hines Dep. 45:23-46:5, 51:3-54:20, 56:12-57:14.) Ms. Hines also viewed the photographs, which Mr. Martin confirmed were of Plaintiff in the house. (D.'s SUMF ¶ 41-42; Pl.'s Resp. to SOF ¶ 41-42; Hines Dep. 48:1-9; Martin Dep. 74:16-75:9.) Ms. Hines concluded in her investigative report that the photos confirm Plaintiff was asleep and that, even without the photos, the testimony supports that Plaintiff was asleep. (D.'s SUMF ¶ 43; Hines Dep. 48:1-19, 61:9-12, 62:2-6; Hines Investigative Report.)

### 5.  June 28, 2012 - The Termination

On June 28, 2012, Horizon House's Human Resources Department made the decision to terminate Plaintiff's employment. (D.'s SUMF ¶ 48; Martin Dep. 13:19-21, 87:19-89:14.) Viewing the facts in the light most favorable to Plaintiff, Ms. Sweeney, Ms. Lyde, Mr. Skillings, and Mr. Martin all participated in the decision to terminate Plaintiff's employment. (D.'s SUMF ¶ 45; Pl.'s Resp. to SOF ¶ 45; Pl.'s SOF ¶ 101, 103; Lyde Dep. 22:13-23:5; Martin Dep. 87:19-88:9.) Mr. Martin, Ms. Lyde and Ms. Sweeney did not know that Plaintiff was Liberian, but did know that he was from Africa and spoke with an accent. (Pl.'s SOF ¶ 23, 29, 43-44; Lyde Dep. 49:7-22; Martin Dep. 28:16-29:3; Sweeney Dep. 15:11-13.) In addition, Plaintiff had specifically complained to Ms. Sweeney twice about discriminatory comments made by Mr. Martin regarding Africans. (Pl.'s SOF ¶ 42; Pl. Dep. 81:18-84:23, 192:18-24; 271:2-8.) Ms. Sweeney took no action in response to Plaintiff's complaints, instead responding that she does not understand Africans' accents. (Pl.'s SOF ¶ 43-45; Pl. Dep. 82:25-87:13.) After the decision was made to terminate Plaintiff on June 28, 2012, Mr. Martin and a member of Human Resources, Nancy DeAngelis, met with Plaintiff to communicate the decision to terminate his employment. (D.'s SUMF ¶ 48; Martin Dep. 13:19-21, 87:19-89:14.)

### 6.  Grievance Letter – July 11, 2012

On July 11, 2012, Plaintiff filed a grievance letter to challenge his termination. (D.'s SUMF ¶ 49; Pl.'s Resp. to SOF ¶ 49; Pl. Dep. 143:2-10; Grievance Letter.) Plaintiff admitted that he had taken off his shoes, relaxed, and closed eyes, but that if he did fall asleep, it was not purposeful. (D.'s SUMF ¶ 50; Pl.'s Resp. to SOF ¶ 50; Grievance Letter.) Dr. Skillings and Mr.

Joyner met with Plaintiff to discuss his grievance, but ultimately decided to uphold the termination decision. (D.'s SUMF ¶ 53; Pl.'s Resp. to SOF ¶ 53; Skillings Dep. 15:15-18, 23:18-26:8; Joyner Dep. 17:3-7; Letter Upholding Termination Decision.) Plaintiff was replaced by Nathanial Edwards and then James Malloy, both of whom are African-American. (Pl.'s SOF ¶ 98.)

### 7.  Treatment of Similarly Situated Individuals

At least four other individuals were also found to have been sleeping on the job. (D.'s SUMF ¶ 55; Pl.'s Resp. to SOF ¶ 55.) The first person is an unnamed black male who was not born in an African country and was only given a verbal warning when found sleeping on the job. (D.'s SUMF ¶ 57; Pl.'s Resp. to SOF ¶ 57.) The second person, Arthur Brown, is also a Liberian man. (D.'s SUMF ¶ 59-63; Pl.'s Resp. to SOF ¶ 59-63.)  Mr. Brown was given a final written warning for sleeping on the job. (D.'s SUMF ¶ 62; Pl.'s Resp. to SOF ¶ 62.) The third and fourth persons were found to both be asleep while working together in one of the homes and two photographs were taken. (Ex. V).

The third person, Dambou Wisner, is an African-American/Black male who was born in Liberia. (D.'s SUMF ¶ 65; Pl.'s Resp. to SOF ¶ 65.) Mr. Wisner had gone out to his car to get a blanket and was then photographed with his eyes closed under that blanket. (D.'s SUMF ¶ 67; Pl.'s Resp. to SOF ¶ 67.) Mr. Wisner denied that he was sleeping and was terminated. (D.'s SUMF ¶ 69-71; Pl.'s Resp. to SOF ¶ 69-71.) The fourth person, Ms. Antoinette Bell, is an African-American female who admitted she may have fallen asleep unintentionally and was apologetic. (D.'s SUMF ¶ 70, 72; Pl.'s Resp. to SOF ¶ 70, 72.) No incident report was prepared for Ms. Bell, she was not referred to the quality assurance department for investigation, no written statements were obtained, and Ms. Bell was not terminated. (D.'s SUMF ¶ 89.)

## II.   Exhaustion

Under Title VII and the PHRA, a plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief. *See* 42 U.S.C. § 2000e-5(e)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962). Defendant states that Plaintiff failed to allege in his EEOC Charge that he was subject to (1) adverse employment action or harassed because of his race, and (2) retaliation for making complaints of discrimination or harassment based upon his race. (D.'s Mot. for Summ. J. 3.)

6

Plaintiff, however, has ceased to pursue claims of racial discrimination. (P.'s Mot. for Summ. J. 1.) Therefore, Defendant's claim of exhaustion is moot.

### III.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment."  *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quoting *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

### IV.   Discussion

#### A.   Section 1981: Racial Discrimination, Retaliation, and Hostile Work Environment

In Plaintiff's original complaint, Plaintiff alleges only racial discrimination, not national origin discrimination, under Section 1981. (Pl.'s Compl. ¶ 27.) After withdrawing his racial discrimination claims, Plaintiff seeks to re-characterize his Section 1981 claim as one of national origin. (Pl.'s Resp. in Opp. to D's Mot. for Summ. J. 23.) Plaintiff's original complaint clearly fails to include national origin discrimination under Section 1981 – "Plaintiff re-asserts and re-

alleges each and every assertion as set forth in Count I (*as to racial discrimination*) of this Complaint relating to discrimination *based upon race*, as such actions constitute identical violations of 42 U.S.C. § 1981," – therefore, Plaintiff's claim fails on these grounds alone. (Pl.'s Compl. ¶ 27.) However, even if Plaintiff had properly brought a claim for national origin discrimination under Section 1981, such a claim must be dismissed on the merits.

"In order to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotations omitted). Section 1981 "does not only protect plaintiffs who are discriminated against based on their race, as that term is understood today; rather, the Supreme Court has held that 'Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.'" *Mullholland v. Classic Management, Inc.*, Civ. Action No. 09-2525, 2010 WL 2470834 at *2 (E.D. Pa. June 14, 2010) (Pollak, J.) (quoting *St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613 (1987)). Therefore, Plaintiff must prove that he was subject to discrimination based on the fact that he was born into a particular ancestral or ethnic group rather than the mere fact that he was born an African. *Id.*, *see also Abdul v. Gamesa Tech. Corp., Inc.*, Civ. Action No. 11-1946, 2012 WL 1344391 at *3 (E.D. Pa. Apr. 18, 2012) (Slomsky, J.) ("a plaintiff must demonstrate that he has been discriminated against because he was born into a particular ethnic group and not just born in a particular place").

Plaintiff is not pursuing claims based on racial discrimination. Plaintiff alleges that he was "subjected to blatantly discriminatory comments about his accent and about the fact that he was born in Africa." (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. Surreply 4.) But just as a plaintiff who was discriminated against for being unable to speak Spanish cannot pursue a claim based on racial discrimination, Plaintiff here likewise cannot pursue a claim of racial discrimination based on his accent. *Abdul*, 2012 WL 1344391 at *4. Plaintiff's accent is the result of being born outside the United States, not a result of his ethnic or ancestral origins, and therefore is insufficient to maintain a claim of racial discrimination under Section 1981. *Id.* Plaintiff's claim that he was subject to discrimination on the basis that he was born in Africa and that

discriminatory comments were made about persons from Africa is likewise insufficient. This is precisely the type of claim that cannot be brought under Section 1981, a claim based on birthplace alone. *St. Francis Coll.*, 481 U.S. at 614 (Brennan, J., concurring) ("*birthplace alone is insufficient to state a claim under § 1981*) (emphasis in original). Therefore, Plaintiff's claim of racial discrimination under Section 1981 must fail.

Because Plaintiff's claim of racial discrimination under Section 1981 fails, his claims of retaliation and hostile work environment must also be based on national origin and therefore must also fail. Plaintiff claims he was terminated in retaliation for a protected activity – making complaints about discrimination based on his accent and African origin. However, under Section 1981, the protected activity must relate to discrimination prohibited by the statute itself. *Jimmy v. Elwyn, Inc.*, No. CIV.A. 11-7858, 2014 WL 630605, at *10 (E.D. Pa. Feb. 18, 2014) (Tucker, C.J.). Since the complaints were regarding comments that discriminated against Plaintiff based on his national origin, not his race, it was not protected activity under Section 1981. *Id.* Just as the complaints themselves do not fall under Section 1981 because they were based on national origin discrimination, the hostile work environment claim likewise cannot come within the ambit of Section 1981 when each of the underlying acts of discrimination were based on national origin. *Beaubrun v. Inter Cultural Family*, No. CIV.A. 05-06688, 2006 WL 1997371, at *5 (E.D. Pa. July 13, 2006) (Stengel, J.) (dismissing all claims under Section 1981 when underlying discrimination was based on national origin rather than race). Therefore, Plaintiff's retaliation and hostile work environment claims under Section 1981 must fail.

Summary judgment is granted as to Plaintiff's claims under Section 1981.[2]

B.  Wrongful Termination under Title VII and PHRA

Plaintiff has brought suit for discrimination based on national origin under Title VII and the Pennsylvania Human Relations Act. In the absence of direct evidence of discrimination, national origin discrimination claims are subject to the burden-shifting framework set out in *McDonnell*

---

[2] The Court notes that the line drawn by the Supreme Court in *St. Francis Coll. v. Al–Khazraji* between racial discrimination and national origin discrimination is a weak one. 481 U.S. 604 (1987). At this time, however, the distinction still stands. *Phifer v. Sevenson Envtl. Servs., Inc.*, 619 F. App'x 153, 156 (3d Cir. 2015).

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this standard, a plaintiff must first establish a prima facie case of discrimination by showing: (1) the employee is a member of a protected class; (2) the employee is qualified for the position; (3) the employee suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-411 (3d Cir. 1999).  If a plaintiff is successful, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate reason for the employment action is presented, the burden shifts back to the plaintiff to show that the employer's proffered reason was in fact pretext for discrimination. *Id.* at 804. This framework applies equally to national origin discrimination under Title VII and the PHRA. *Paradoa v. Phila. Hous. Auth.*, 610 F. App'x 163, 165 (3d Cir. 2015) (citing *Jones*, 198 F.3d at 410).

### 1.   *Prima Facie Case of Discrimination*

Plaintiff must begin by proving his prima facie case of discrimination by a preponderance of the evidence. *Fekade v. Lincoln Univ.*, 167 F.Supp.2d. 731, 740 (2001) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 US 248, 252-53 (1981)). Plaintiff must prove by a preponderance of the evidence that (1) he was a member of a protected class, (2) he was qualified for and satisfactorily performed his job, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse employment action would give rise to an inference of discrimination. *Id.* at 741-42. For purposes of summary judgment, defendant does not dispute the first three elements, only that Plaintiff cannot prove the circumstances of his suspension and termination give rise to an inference of discrimination. (D.'s Mot. for Summ. J. 6.) Therefore, the prima facie case here turns on whether Plaintiff can prove that it is more likely than not that a reasonable jury could find that the circumstances give rise to an inference of discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (recognizing that "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence" that there was discrimination).

"Many different types of evidence can support an inference of impermissible discrimination." *Jimmy v. Elwyn, Inc.*, No. CIV.A. 11-7858, 2014 WL 630605, at *6 (E.D. Pa. Feb. 18, 2014) (Tucker, C.J.) (citing *Golod v. Bank of Am. Corp.*, 403 Fed. Appx. 699, 703 n.2

(2010)). "[C]omparator evidence is only one way of showing a sufficient nexus between the negative employment actions taken by [Defendant] and [Plaintiff]'s status as an individual of African national origin." *Id*. Evidence of impermissible discrimination against other employees or direct evidence of discrimination from statements made by Plaintiff's supervisors suggesting impermissible animus can also support an inference of discrimination. *Id*. (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Comparator evidence comes from similarly situated individuals who are not members of the protected class and are treated more favorably. Plaintiff claims similarly situated individuals who were not members of the protected class were treated more favorably when they were scheduled to work shifts in pairs and when they received less severe treatment for the same offense of sleeping on the job. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 28-29.) Although there is limited evidence as to the first claim, Plaintiff presents four other individuals who were also found to be sleeping on the job. Of those four individuals, two were also from Liberia and two were from America. The two employees from America who were found sleeping on the job were not terminated. (D.'s SUMF ¶ 55-72; Pl.'s Resp. to SOF ¶ 55-72.)

Evidence of impermissible discrimination against other employees can also support an inference of discrimination. *Jimmy*, 2014 WL 630605 at *6. Here, two employees from Liberia were also found sleeping on the job. (D.'s SUMF ¶ 55-63; Pl.'s Resp. to SOF ¶ 55-63.) One of the employees was given a final written warning, a more severe punishment than the two American-born employees. (D.'s SUMF ¶ 62; Pl.'s Resp. to SOF ¶ 62.) Particularly persuasive here, is that employee from Liberia who was terminated for sleeping on the job was in the same job position, in the same house, and was even found at the same time as one of the American-born employees. (Exhibit V.) Although the two were in a substantially similar position, the Liberian employee was terminated and the American employee was not. (D.'s SUMF ¶ 65-71; Pl.'s Resp. to SOF ¶ 65-71.)

Direct statements from Plaintiff's supervisors provide additional evidence that further informs the inference of discrimination. Plaintiff claims that Mr. Martin, his supervisor, made multiple comments such as "Africans are lazy," "All you Africans do is complain," "Africans, they don't like to do any work," and comments regarding Plaintiff's accent. (Pl.'s SOF ¶ 34; Pl. Dep. 77:6-12; 78:20-23.) Mr. Martin's statements are plainly discriminatory. When Plaintiff

complained to Ms. Sweeney, Mr. Martin's supervisor, about the offensive comments, she likewise made comments about Plaintiff's accent. (Pl.'s SOF ¶ 43; Pl. Dep. 82:25, 83:1-6, 84:15-23, 192:18-24, 271:2-8.) Statements discriminating against Plaintiff on the basis of his accent likewise constitute evidence that gives rise to the inference of discrimination. *See Kanaji v. Children's Hosp. of Phila.*, 276 F.Supp.2d. 399, 402-03 n. 5 (E.D. Pa. 2003) (Rufe, J.) ("'It is enough to show that the complainant was treated differently because of his or her foreign accent…'") (quoting 45 Fed. Reg. at 85633). Therefore, Plaintiff has pointed to sufficient facts in the record to make it more likely than not that a reasonable jury could find an inference of discrimination.

### 2.   *Legitimate, Non-Discriminatory Reason*

"If a plaintiff establishes a prima facie case of discrimination, then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993)). "If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.* Defendant argues that the legitimate, non-discriminatory reason for terminating Plaintiff was that he was found sleeping on the night shift. (D.'s Mot. for Summ. J. 9.) Defendant further claims that sleeping on the night shift is neglectful of the disabled participants for whom Plaintiff was to be caring and therefore it is a violation of Defendant's policies. (D.'s SUMF ¶ 43; Hines Dep. 48:1-19, 61:9-12, 62:2-6; Hines Investigative Report.) Considering Defendant has photographic evidence to support its accusation that Plaintiff was sleeping on the job and Defendant's employees called the house phone to try and awaken Plaintiff at the time, Defendant has sufficiently shown for summary judgment purposes a legitimate, non-discriminatory reason for terminating Plaintiff. (D.'s SUMF ¶ 27-28; Pl.'s Resp. to SOF ¶ 27-31; Sweeney Dep. 46:4-49:24.)   Therefore, the burden shifts back to Plaintiff to show the Defendant's proffered reason is pretextual.

### 3.   *Pretext*

Since Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must now demonstrate Defendant's proffered reason is pretextual. "[T]o

avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations omitted). Thus, Plaintiff must produce evidence sufficient for a reasonable jury to either (a) disbelieve Defendant's legitimate reason for the termination, or (b) believe that an invidious discriminatory reason was more likely than not a motivating or determinative factor behind the termination. *Id.* Although Plaintiff need only produce sufficient evidence as to one or the other, Plaintiff here claims both are present. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 33.)

### (a) Defendant's Reason was Fabricated

To demonstrate that Defendant's proffered reason was fabricated, Plaintiff can show that the reasons are contradicted or inconsistent, implausible, incoherent, weak, or other evidence demonstrating the reason is unworthy of credence thereby permitting a reasonable jury to "infer that the employer did not act of the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765. Although Plaintiff lays out a great deal of law as to the first method of demonstrating pretext, Plaintiff fails to back this up with sufficient facts to demonstrate that Defendant's reason, that Plaintiff was sleeping at work, was fabricated. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 30-33.) While Plaintiff argues that Defendant tried to hide who the real decision-makers were and treated similarly situated employees differently, neither of those claims weighs on whether the reason for terminating Plaintiff was fabricated; rather those claims demonstrate, even though the reason was true, it is animus that motivated the decision to terminate him. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 34.) Furthermore, there are no inconsistent reasons given for Plaintiff's termination, the reason is supported by documentation and an investigation, and there are no other factors demonstrating the accusation that Plaintiff was sleeping was fabricated. (D.'s SUMF ¶ 39-43; Pl.'s Resp. to SOF ¶ 39-42; Hines Dep. 45:23-46:5, 51:3-54:20, 56:12-57:14.) In addition, an investigation by an independent employee of Defendant found support for the allegation that Plaintiff slept on the job, further diminishing Plaintiff's claim that the reason was fabricated. (D.'s Reply in Supp. of Mot. for Summ. J. 2.) Therefore, Plaintiff has not produced

evidence sufficient for a reasonable jury to find that it is more likely than not that Defendant's reason was fabricated.

### (b) Defendant's Reason Did Not Motivate the Employment Action

Plaintiff also states that Defendant's proffered reason for termination did not motivate the employment action, rather invidious discrimination did. To support this claim, Plaintiff points to the discriminatory comments made by Mr. Martin and Ms. Sweeney, Ms. Sweeney's failure to respond to Plaintiff's complaints of discrimination, the timing between the complaints and his termination, the more favorable treatment of an American employee who committed the same offense, and Defendant's attempt to conceal Mr. Martin's role in the termination decision. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 33-35). "[F]actors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638-39 (3d Cir. 1993). Plaintiff here has presented facts to support each of these three factors, thereby creating a genuine dispute of fact precluding summary judgment. *Josey*, 996 F.3d at 637 ("In deciding a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial. The district court cannot decide issues of fact at the summary judgment stage."). "Discriminatory conduct is often subtle and difficult to prove. For this reason, our legal system permits discrimination plaintiffs to prove their cases with circumstantial evidence." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (citing *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987). This record contains circumstantial evidence from which a reasonable trier of fact could find that Defendant's claims are pretextual and, particularly based on the disputed comments, that Plaintiff's termination was the result of animus. (Pl.'s SOF ¶ 34; Pl. Dep. 77:6-12; 78:20-23.) Furthermore, Defendant's argument that Mr. Martin did not have the authority to terminate Plaintiff and therefore there can be no link between the discrimination and his termination is likewise an issue of fact based on competing testimony that is properly left for the jury to decide. (D.'s SUMF ¶ 45; Pl.'s Resp. to SOF ¶ 45; Pl.'s SOF ¶ 101, 103; Lyde Dep. 22:13-23:5; Martin Dep. 87:19-88:9.) Since the issue of pretext in this case turns largely on the credibility of the competing testimony regarding disputed comments allegedly made toward Plaintiff by his supervisor and that supervisor's authority to

terminate him, it is inappropriate to decide on a motion for summary judgment. *Weldon*, 896 F.2d at 800 ("[T]his case turns largely on the credibility of the competing testimony. As such, it is inappropriate to decide on a motion for summary judgment."). Therefore, Defendant's summary judgment motion as to Plaintiff's claims of national origin discrimination under Title VII and the PHRA is denied.

C.   Hostile Work Environment under Title VII and the PHRA

Plaintiff brings claims under both Title VII and the PHRA for hostile work environment. Again, the analysis is the same under both statutes: Plaintiff "must show that (1) he suffered intentional discrimination because of his national origin; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). In employing this analysis, a court must evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Title VII is not violated by "[m]ere utterance of an ... epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

1.   *Intentional Discrimination*

Plaintiff set forth evidence sufficient to show that he suffered intentional discrimination because of his national origin by establishing his prima facie case.  In an attempt to refute this, Defendant argues that the discriminatory comments were based on Plaintiff's African-origin and, because Africa is a continent rather than a nation, the comments cannot constitute intentional discrimination based on national origin. Defendant's argument is based on one district court case from the Northern District of Texas and stands in stark contrast to the relevant case law in our District. *See Kanaji v. Children's Hosp. of Philadelphia*, 276 F. Supp. 2d 399, 404 (E.D. Pa. 2003) (Rufe, J.) ("Plaintiff's Title VII claim for 'national origin' discrimination cannot fail merely because he identifies himself . . . as being 'of direct African descent," and does not

specify a nation or country of origin."); *see also Frazier v. Exide Techs.*, No. CIV.A. 11-1863, 2012 WL 440398 at *3 (E.D. Pa. Feb. 13, 2012) (Goldberg, J.) ("[O]ne's "national origin" need not refer to a particular country, but 'is better understood by reference to certain traits or characteristics that can be linked to one's place of origin, as opposed to a specific country or nation.'") (quoting *Kanaji*, 276 F.Supp.2d at 401-02). It would appear that even Defendant believes this argument is devoid of any merit. The Court now confirms this.[3]

Defendant similarly argues that the employees who made the discriminatory comments were unaware that Plaintiff is specifically Liberian and therefore could not have discriminated against Plaintiff based on his nationality. For the same reasons, this argument likewise fails. Logically, employees cannot skirt anti-discrimination statutes by failing to recognize and identify the specific country of origin when making discriminatory comments based on a person's accent and place (continent) of origin. Precedentially, "the United States Court of Appeals for the Third Circuit [has] held that evidence that a police chief stated he 'would not allow 'Spics and Niggers' to run his department' was sufficient to overcome summary judgment on a national origin discrimination claim." *Frazier v. Exide Techs.*, No. CIV.A. 11-1863, 2012 WL 440398, at *3 (E.D. Pa. Feb. 13, 2012) (quoting *Perez v. N.J. Transit Corp.*, 341 Fed. Appx. 757, 761 (3d Cir. 2009)). Therefore, Defendant's attempts to rely on technicalities to overcome Plaintiff's demonstration of intentional discrimination must fail.

   2. *Severe or Pervasive*

---

[3] The parties are further invited to consider the dilemma in the context of distinguishing people "of color" from people "not of color." Simply because all persons involved are "of color" or "not of color" does not mean each person is alike in terms of their race, nationality, and ethnicity as well. Similarly, discrimination need not be against each person based on his or her specific nationality when that discrimination is against all people of that color generally. It is indeed ironic that the declarant of such a discriminator and hurtful epithet, could find himself a victim of the same discriminatory and hurtful epithet in another setting, by lumping people "of color" together. Regardless of how widespread or how narrow the discrimination, ultimately it is discrimination. Discriminating against all people of color or all people from a certain continent is no less hostile than discriminating against persons of a specific color or a person from a specific country. Defendant's claim that the discrimination was based only on Plaintiff's continent and not his country is similarly misinformed.

Next, Plaintiff must prove that Defendant's conduct was severe or pervasive. To do so, Plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 279 (3d Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This involves a consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to'" a hostile work environment." *Benny v. Pa., Dep't of Corr., State Corr. Inst. at Somerset*, 211 F. App'x 96, 97 (3d Cir. 2006) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Throughout his filings, Plaintiff asserts that once Mr. Martin became his supervisor he was repeatedly faced with discriminatory comments, scheduled to work the night shift, frequently scheduled to work alone or with a co-worker who did not appear, and faced further discrimination upon complain to both his immediate supervisor and his supervisor's superior. "[T]he Supreme Court has explicitly stated that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *Chughtai v. Jeanes Hosp.*, No. CIV.A. 11-4173, 2012 WL 4459592, at *10 (E.D. Pa. Sept. 26, 2012) (Padova, J.) (quoting *Faragher*, 524 U.S. at 788); *see also Peace–Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir.2010) (same) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)). Plaintiff experienced a change in the terms and conditions of his employment. In addition to facing repeated discriminatory comments as discussed previously, Plaintiff was moved from the evening shift to the graveyard shift. (D.'s SUMF ¶ 20; Pl.'s Resp. to SOF ¶ 20; Pl.'s SOF ¶ 30; Pl. Dep. 49:23-50:11, 50:17-23; 57:13-20.) Furthermore, Plaintiff was then required to work that graveyard shift alone at least once a week, which posed a risk to his safety. (Pl.'s SOF ¶ 27, 31; Sweeney Dep. 40:2-10; Pl. Dep. 71:14-25.) When Plaintiff attempted to improve the conditions of employment by requesting a co-worker for Plaintiff's own safety, he was met with further discrimination and a refusal to help. (Pl.'s SOF ¶ 33-34; Pl. Dep. 77:19-25, 78:1-23.) This cycle of being assigned to a work environment in which the safety conditions had changed, complaining about the changed conditions, and facing discrimination as a result continued repeatedly. (Pl.'s SOF ¶ 37-38; Pl. Dep. 77:6-12, 96:2-11,

101:13-24, 102:2-9, 15-24, 269:3-25.) Defendant attempts to analogize the comments in this case to those made in *Chugati*. (D.'s Mot. for Summ. J. 19.)  However, Defendant ignores that it was not comments alone which created the hostile work environment in this case and therefore such an analogy is unavailing when faced with the totality of the circumstances. Accordingly, Plaintiff has shown the ability to prove the harassment to be severe or pervasive.

### 3.   Detrimental Affect

Next, Plaintiff must show that the harassment detrimentally affected him and would detrimentally affect a reasonable person in his position objectively. Defendant does not dispute either element. (D.'s Mot. for Summ. J. 18-19.)

### 4.   Basis for Vicarious Liability

Finally, Plaintiff must show that there is a basis for vicarious liability. "[A]n employee is a "supervisor" for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim[.]" *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2439 (2013). This can be demonstrated either by the plaintiff showing that (1) the supervisor took a tangible employment action or by the defendant failing to show that (2) it exercised reasonable care to prevent and promptly correct harassment and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided. *Id.* at 2441-42. Here, the parties present a genuine dispute of material fact as to whether Mr. Martin possessed responsibilities sufficient to deem him a supervisor under the law. Plaintiff states that Mr. Martin participated in the termination decision as evidenced by various statements and his involvement in the termination itself. (D.'s SUMF ¶ 45; Pl.'s Resp. to SOF ¶ 45; Pl.'s SOF ¶ 101, 103; Lyde Dep. 22:13-23:5; Martin Dep. 87:19-88:9.) Defendant states that only higher-up employees possessed such power and cite contradictory testimony. (D.'s SUMF ¶ 16; Martin Dep.13:19-21 (Ex. Q); Sweeney Dep. 19:18-20:3.) As a result, given the current disputed state of the record, summary judgment is not appropriate on these grounds.

Even if Plaintiff cannot show that there is a basis for vicarious liability, if Plaintiff can show that the employer was negligent in failing to prevent or remedy the harassment then Plaintiff's claim can go forward. *Id.* at 2448. Plaintiff has demonstrated that he complained to Ms. Sweeney, a higher-up supervisor multiple times, regarding Mr. Martin's conduct. (Pl.'s SOF

¶ 42; Pl. Dep. 81:18-84:23, 192:18-24; 271:2-8.). In addition, Plaintiff complained directly to human resources. (D.'s SUMF ¶ 48; Martin Dep. 13:19-21, 87:19-89:14.) Defendant did not follow proper protocol in recording, investigating, and addressing such complaints. (Pl.'s SOF ¶ 54-55; Sweeney Dep. 29:8-11; 43:8-23; Martin Dep. 56:8-16.) Therefore, even if Mr. Martin is a co-worker and not a supervisor, a reasonable jury could find Defendant acted negligently in failing to remedy the discrimination despite Plaintiff's complaints.

Based on the totality of the evidence, Defendant's summary judgment motion as to Plaintiff's hostile work environment claims under Title VII and the PHRA is denied.

D. Retaliation under Title VII and the PHRA

Plaintiff brings claims under both Title VII and the PHRA for retaliation. Both claims are treated identically and follow the burden-shifting framework of *McDonnell Douglas*. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). To maintain a claim for retaliation, Plaintiff first must prove his "prima facie case by tendering evidence that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). Defendant does not dispute the first and second elements of retaliation, but claims that Plaintiff cannot prove the third element requiring a causal connection. (D.'s Mot. for Summ. J. 20.)

"A plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2534 (2013). Therefore, "the employee must show that the employer's 'desire to retaliate was the but-for cause of the challenged employment action' such that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Thompson v. Kellogg's USA*, No. 14-4325, 2015 WL 4394749, at *3 (3d Cir. July 20, 2015). The Third Circuit has "recognized two primary methods for an employee to establish a causal connection. First, "[w]here the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,

503 F.3d 217, 232 (3d Cir.2007). Second, if the temporal proximity is not evidence, the court must determine "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference' " of a causal connection between the protected activity and the adverse employment action. *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)).

Plaintiff states he was placed on administrative leave within days of making his last complaint to Ms. Sweeney and human resources, but fails to establish facts clearly demonstrating such a timeline and thus proposes using a "conservative estimate" of thirty days. (Pl.'s Resp. in Opp. to D.'s Mot. for Summ. J. 39.)  "While the passage of mere hours or days has been deemed unusually suggestive, courts have held that the passage of weeks, months, and years removes any suggestion of retaliatory motive." *Shenk v. Pennsylvania*, Civ. No. 11–1238, 2013 U.S. Dist. LEXIS 67495, at *21–22,2013 WL 1969311(M.D.Pa. May 13, 2013) (*comparing Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir.2004) (two month gap insufficient) and *Thomas v. Hammonton*, 351 F.3d 108, 114 (3d Cir.2003) (three week gap insufficient) *with Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (two day gap unusually suggestive) and *Reinhart v. Mineral Techs., Inc.*, Civ. No. 05–4203, 2006 WL 4050695 (E.D.Pa. Nov. 27, 2006) (twenty-four hour turnaround unusually suggestive)). Therefore, even using Plaintiff's unsupported claim that he made a complaint of discrimination thirty days prior to his administrative leave, Plaintiff fails to show an unusually suggestive passage of time sufficient to independently establish a causal connection.

Since Plaintiff cannot demonstrate that there was an unusually suggestive passage of time between his complaints and suspension, he must prove causation through circumstantial evidence including, but not limited to, retaliatory animus, intervening antagonism, and inconsistent reasons for termination. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Viewing all facts in the light most favorable to Plaintiff, Plaintiff made multiple complaints about discrimination which were met with further discrimination, never reported, never investigated, and never remedied. (Pl.'s SOF ¶ 54-55; Sweeney Dep. 29:8-11; 43:8-23; Martin Dep. 56:8-16.) Plaintiff initially complained to his supervisor (Mr. Martin) making the comments, then to his supervisor's supervisor (Ms. Sweeney), and finally to human resources. (Pl.'s SOF ¶ 46-47; Pl. Dep. 89:8-23, 90:6-13, 91:3-4, 91:5-12.) Shortly after complaining to human resources, Plaintiff was placed on administrative leave and subsequently terminated. (D.'s

SUMF ¶ 36; Pl.'s Resp. to SOF ¶ 36; Administrative Leave Letter; Pl. Dep. 128:23-129:24.) Plaintiff had never been warned or reprimanded in any way in the past before his suspension and termination. (Pl.'s SOF ¶ 75; Exhibit J at p. 24-25, No. 61, 62; Martin Dep. 20:11-20, 21:1-3, 20-24, 22:1-3, 12-22; Sweeney Dep. 39:3-5.) Defendant claims that any causal connection was broken when Plaintiff was found sleeping on the job between his initial complaint and suspension. (D.'s Mot. for Summ. J. 22.)

The Third Circuit has recognized that a causal connection is unlikely when there were poor performance reviews *before* the initial complaint, but has not applied the same rule to discipline occurring between the complaint and termination. *Windfelder v. May Dep't Stores Co.*, 93 F. App'x 351, 355 (3d Cir. 2004); *see also Dean v. Kraft Foods N. Am., Inc.*, No. CIV.A.02-8609, 2005 WL 1793532, at *10 (E.D. Pa. July 27, 2005) (Yohn, J.). Just as receiving a poor performance review and then filing a complaint of discrimination undermines the validity of the discrimination claim, likewise filing a complaint of discrimination and then receiving a poor performance review undermines the poor performance review by the same logic. *Dean*, 2005 WL 1793532 at *10 ("employees who suspect that they may be fired could create a valid retaliation claim by merely alleging discrimination before their employers have had a chance to take action"). Although Plaintiff sleeping at work makes it less likely his complaints were the but-for cause of his termination, since other similarly situated employees who were found sleeping but had not complained of discrimination were not terminated, this error does not wholly undermine Plaintiff's retaliation claim. (D.'s SUMF ¶ 55-72; Pl.'s Resp. to SOF ¶ 55-72.)

Moreover, Plaintiff was met with antagonism and further discrimination when lodging his complaints. (Pl.'s SOF ¶ 43; Pl. Dep. 82:25, 83:1-6, 84:15-23, 192:18-24, 271:2-8.) In addition, Plaintiff has demonstrated that his complaints were never formally recorded, investigated, or otherwise addressed, (Pl.'s SOF ¶ 39-40, 51, 54-55; Lyde Dep. 23:9-23, 59:5-24; Sweeney Dep. 29:8-11; 43:8-23; Martin Dep. 56:8-16), which likewise shows a retaliatory animus toward Plaintiff's complaints. *Speed v. WES Health Sys.*, 93 F. Supp. 3d 351, 357 (E.D. Pa. 2015). All of these facts, taken together, make it more likely than not that a reasonable jury could infer retaliation was the but-for cause of Plaintiff's termination and therefore support a *prima facie* case. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) ("the prima facie case under the *McDonnell Douglas-Burdine* pretext framework is not intended to be onerous").

Next, Defendant must provide a legitimate, non-discriminatory reason for Plaintiff's termination. Then, Plaintiff must rebut that reason by showing it is merely pretext for retaliation. For the same reasons explained above in IV.B.3, Defendant's legitimate, non-discriminatory reason for terminating Plaintiff is overcome by Plaintiff's showing of pretext. Therefore, Defendant's motion for summary judgment as to Plaintiff's claims of retaliation under Title VII and the PHRA are denied.

## CONCLUSION

Based on the foregoing analysis, summary judgment is denied on all claims except Plaintiff's claims under 42 U.S.C. § 1981 of discrimination, retaliation, and hostile work environment.

An appropriate order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
C. DARNELL JONES, II              J.